IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JOSHUA L. MAYNARD, | ) |
| Petitioner, | ) |
| v. | ) Case No. 4:20-cv-00169-AGF |
| WILLIAM STANGE, | ) |
| Respondent. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on the pro se petition of Missouri state prisoner Joshua L. Maynard for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner was convicted by a jury of one count of attempted manufacture of a controlled substance, one count of first-degree arson, and two counts of second-degree felony murder. Petitioner was sentenced to four life sentences, consisting of two concurrent sets to run consecutively.

In his federal habeas petition, Petitioner raises several claims of ineffective assistance of counsel, as well as two claims of trial court error. For the reasons set forth below, habeas relief will be denied.

## BACKGROUND

**Trial**

The charges against Petitioner stemmed from a fire that erupted in the home of Petitioner's then-girlfriend, Joni Stinnett, on December 1, 2012. At the time, Ronda

Ashlock and her two infant children were living with Stinnett. Neither child escaped the fire, and both died of smoke inhalation.

The evidence at trial showed the following, as summarized by the Missouri Court of Appeals in Petitioner's direct appeal:

> Maynard was Stinnett's boyfriend at the time of the fire. Two days before the fire, on November 29, 2012, Maynard was at Stinnett's house. A witness overheard a discussion between Maynard and Allen Glasgow ("Glasgow"), Stinnett's brother. Maynard told Glasgow that he could put a meth lab in Stinnett's closet. Glasgow did not disagree with the idea. Another witness testified that the two were talking about "planting" a meth lab in Stinnett's closet. A third witness testified that she overheard another conversation between Maynard and Glasgow discussing a meth lab in Stinnett's house.
>
> That night, Maynard, Stinnett, Glasgow, and Tosha Lee ("Lee") drove to Arkansas where they bought and used meth. No one in the group slept that night because they were "all high on meth." On the way home the next morning (November 30, 2012), the group stopped in a field to retrieve a bag. The bag contained lye and ice packs, both of which are used in the production of meth. The group later stopped at a convenience store to purchase lighter fluid and glass pipes, followed by a pharmacy, where Maynard gave Lee fifty dollars to purchase Sudafed pills. The law limited the amount of Sudafed one could purchase, and purchasers were required to sign for each purchase. Lee agreed to sign for the purchase in exchange for "some of the meth that came out of [the cook]."
>
> Back in Missouri, the group went to a camper in the woods to cook meth. Maynard admitted to stripping the lithium from batteries using wire cutters. Maynard gave the lithium to Glasgow and Lee, who cooked the meth inside the camper. Maynard also admitted to blowing through a straw, which was required to get a necessary chemical reaction started. Maynard described the cooking process as the "shake and bake" method of producing meth. During the cook, a vessel caught fire and the cook failed. Lee testified that the group still wanted meth because they were not "done partying."
>
> At some time, Maynard and Stinnett began fighting. Mad at Maynard, Stinnett called a friend to take her home. Maynard, Glasgow, Lee, and another friend continued on to the Old Tram Bar in Ellington. Lee testified

2

that while at the bar she sold fake meth for Maynard and Glasgow; this testimony was admitted over defense counsel's timely objection at trial.

When Stinnett arrived at her home, a group of mostly children was present. Two older children were babysitting several younger children, including the two Victims. Around 11:30 P.M., Stinnett's mother told the older children to sleep at the next-door neighbor's house because Stinnett and her mom needed to talk. A few of the children, including the Victims, remained at Stinnett's home.

Ashlock, who was at Stinnett's home, went to the Old Tram Bar to pick up Lee. Ashlock told Lee that Stinnett was telling her mother about the meth lab in the camper. Maynard, Glasgow, Lee, and two others then went back to the camper to clean up the evidence. The group's truck stopped a five-minute walk from the camper. Maynard said that the truck was "stuck" and that he would have to get another truck to pull it out. Maynard instructed Glasgow, Lee, and the others to walk to the camper and wait while he got another truck. Lee heard the truck start, but Maynard never returned.

One of the older children, who was sleeping at Stinnett's next-door neighbor's house, woke up to use the bathroom. The child saw Maynard, and a second individual she could not identify, outside with Stinnett. Another child [Lee's daughter, Autumn Lee,] also woke up to use the bathroom. She saw a dark truck pull up on the side of Stinnett's home, and saw Maynard and another man get out. As she returned from the bathroom, the child saw Stinnett run out of her home. The child said it looked like Stinnett's hands were on fire. According to the child, Stinnett was able to pat the fire out on her basketball shorts.

Stinnett's home was soon engulfed in flames. Stinnett and others in the home ran toward the next-door neighbor's house. Stinnett yelled that two children were still in the house; Stinnett's next-door neighbor attempted to rescue the children but was unsuccessful.

Firefighters and investigators soon arrived on the scene. A fire marshal opined that the fire originated inside the home, because all the circuit breakers were tripped, which would not have happened if the fire had originated outside the home. A deputy sheriff testified that there was more fire toward the rear right corner of the home. Stinnett's bedroom was in the rear right corner. Investigators found numerous pieces of evidence associated with the "shake and bake" method of producing meth in Stinnett's home. Lithium batteries with an end removed were found; an expert testified that he had never encountered a situation where batteries were cut up outside

3

of meth production. Cut-up instant cold packs were also found at the scene. The expert testified that meth cooks cut into these packs to remove the ammonium nitrate needed to produce meth. Cold packs are used for treating inflammation on the body. The packs are discarded after regular use and are not cut open. Investigators also found, among other items, a partially-used can of acetone underneath a burn barrel. The expert testified that the acetone was often used as a combustible solvent in meth production and burn barrels are commonly used to destroy evidence.

Lee, who had been waiting for Maynard to return to the camper, left when she received a phone call about a fire. Lee joined up with Glasgow and the two of them found Maynard sitting in his truck off the highway. At some point, Glasgow and Maynard left without Lee. Lee testified at trial that "there was a note . . . and it said don't try to get a hold of me and [Maynard and Glasgow] were nowhere to be found." Maynard was later arrested in Arkansas, south of Little Rock.

Resp. Ex. F at 4-7.

As noted above, Petitioner was charged with attempt to manufacture a controlled substance, first-degree arson, and two counts of felony murder for the two infant victims who died in the fire. A jury convicted Petitioner of all four counts.

**Direct Appeal**

On direct appeal, Petitioner, through appointed counsel, argued that (1) there was insufficient evidence to support a guilty verdict on the arson count and on the related felony murder counts because those counts were predicated on the underlying arson, and (2) the trial court erred in overruling Petitioner's objection to Lee's testimony that she sold "fake meth" for Petitioner at a bar on the night before the fire. Resp. Ex. C at 12-13.

The Missouri Court of Appeals rejected both arguments. As to the first argument, the appellate court held that the circumstantial evidence was sufficient to allow a reasonable juror to convict Petitioner of first-degree arson and the related felony murder

counts.  The appellate court noted that, based on the jury instructions and the statutes at issue, a guilty verdict on the arson count required only that the jury conclude that someone attempted to produce methamphetamine in Stinnett's home; that the attempt to produce methamphetamine actually caused the fire in the home; and that Petitioner either attempted to produce methamphetamine himself or, under accomplice liability, acted together with, aided, or encouraged another to do so with the purpose of promoting or furthering the attempt to produce methamphetamine.  Resp. Ex. F at 10.  The appellate court held that a jury could reasonably conclude beyond a reasonable doubt from the physical evidence, expert testimony, and witness testimony that all of the above-noted elements were met here.   Resp. Ex. F at 10-16.

The appellate court also rejected Petitioner's second argument, regarding Lee's testimony.  The court held that in light of the other evidence against Petitioner, Petitioner could not show prejudice resulting from admission of the testimony that Lee also sold "fake meth" on Petitioner's behalf on the night in question.  Resp. Ex. F at 16-18.

**State Post-Conviction Proceedings**

In his pro se motion for post-conviction relief, Petitioner asserted a variety of ineffective assistance of counsel claims.  Resp. Ex. I at 11-28.  In his amended motion for post-conviction relief, filed with the assistance of counsel, Petitioner expanded upon and added to these claims.  Petitioner's amended claims were that trial counsel was ineffective for: (1) failing to adduce evidence of the timeline and distances between the relevant locations and events in this case, so as to show that Petitioner could not have been at Stinnett's house at the time the fire started; (2) failing to call as a witness Aaron

5

Stevens, who was present with the group during some of the events in question, or to cross-examine Lee about the events that occurred after the group left the Old Tram Bar, so as to show that Petitioner could not have returned to the Stinnett residence in time to start the fire; (3) failing to call Tony Lee, with whom Autumn Lee lived at one point, to testify that Autumn recanted her statement that she saw Petitioner at Stinnett's home shortly before the fire began or to question Autumn as to this issue; (4) failing to obtain and present at trial an insurance investigation report by an investigator named Kevin Dunkin, showing that the origin of the fire was the stove-top range and not the bedroom, as the State had suggested at trial;[1] (5) failing to elicit evidence that the children who escaped the fire told responding EMTs that they noticed a hot water heater smoking and wires melting in Stinnett's home on the day before the fire; (6) failing to adduce evidence of inconsistencies in the State's evidence, such as the color of Petitioner's truck (white) versus the color of the truck seen outside of Stinnett's residence (dark-colored), the drug-induced state of Stinnett on the night in question, and the fact that police informed the media that the fire was caused by a methamphetamine lab before they had completed their investigation. The amended motion also incorporated by reference all of the claims set forth in Petitioner's pro se motion. Resp. Ex. I at 32-74.

The motion court held an evidentiary hearing, at which Petitioner, Petitioner's trial counsel, insurance investigator Dunkin, and Lee all testified, either in person or by

---

[1] At the time of trial, neither the State nor the defense was aware that the insurance investigation report existed; the report's existence was not discovered until the case was on direct appeal.

6

deposition.  On October 16, 2017, the motion court denied Petitioner's motion for post-conviction relief.

As to Petitioner's first and second claims (regarding timeline and distance evidence), the motion court credited trial counsel's testimony at the evidentiary hearing that counsel considered the so-called timeline defense but rejected it because almost all of the necessary witnesses were under the influence of drugs at the time and were otherwise not credible.  The motion court held that trial counsel reasonably rejected the timeline and distance defenses because Petitioner had no credible evidence of the route the group traveled during the time in question.  The motion court also concluded that no evidence suggested that Stevens would have been willing to testify at trial or that he would have provided favorable timeline or distance evidence.  The motion court noted that Stevens did not testify at the post-conviction evidentiary hearing and that Stevens had pending criminal charges at the time of trial and would have been subject to cross-examination if he testified as a defense witness.

As to Petitioner's third claim (regarding Tony Lee), the motion court found that Petitioner presented no evidence that Tony Lee would have been willing and available to testify at trial about any alleged recantation by Autumn Lee.  The motion court credited trial counsel's testimony that he attempted to secure Tony Lee as a witness and was unable to do so, and the motion court further noted that Petitioner could not secure Tony Lee's appearance at the post-conviction evidentiary hearing either.  Likewise, the motion court credited and found reasonable trial counsel's testimony that he chose not to cross-

7

examine Autumn Lee about the alleged recantation because of the risk that she would deny recanting her statement.

As to Petitioner' fourth claim (regarding the insurance investigation), the motion court described the evidentiary hearing testimony of the insurance investigator, Dunkin, that he concluded the fire was in fact caused by methamphetamine production and started near the right, rear corner of the house, where both the kitchen and bedroom were located.  The motion court noted that Dunkin believed that the fire started at the kitchen stove rather than the bedroom and that a heat source for the fire was the stove, rather than just the chemicals involved in the "shake and bake" form of methamphetamine production, as the State's theory suggested.  However, the motion court held that Dunkin's conclusions would not have affected the outcome of trial because his overall testimony that the fire was in fact caused by methamphetamine production that occurred near the right, rear corner of the house would have only bolstered the State's case.  Therefore, the motion court held that Petitioner was not prejudiced by trial counsel's failure to discover or present evidence of the insurance investigation.

As to Petitioner's fifth claim (regarding the report to EMTs of the smoking hot water heater and melting wires), the motion court found that trial counsel was not ineffective for failing to introduce such evidence because the evidence was hearsay; the children who reported the information to the EMT did not testify at the evidentiary hearing, so there was no way to determine what they would have said at trial; the children also could have provided unfavorable testimony as there was evidence they reported to EMTs that Petitioner "liked to burn things"; and Petitioner was not prejudiced because

8

trial counsel adduced other evidence during the trial of the allegedly defective wiring and water heater issues in Stinnett's home.[2] Resp. Ex. I at 191-92.

As to Petitioner's sixth claim (regarding alleged inconsistencies in evidence), the motion court found that any inconsistencies or weaknesses not explored by trial counsel were a matter of reasonable trial strategy and in any event would not have changed the outcome of trial.

The motion court also rejected each of Petitioner's pro se claims, to the extent they differed from the amended claims, because Petitioner failed to present sufficient evidence in support of them. Resp. Ex. I at 175-96.

On appeal from the denial of post-conviction relief, Petitioner, through appointed counsel, pursued only his claim that trial counsel was ineffective for failing to discover and call insurance investigator Dunkin as a witness. Petitioner did not pursue any of his other post-conviction claims on appeal.

In affirming the denial of post-conviction relief, the Missouri Court of Appeals held that Dunkin's testimony and the insurance investigation report would not have provided a viable defense to Petitioner and, therefore, trial counsel was not ineffective for failing to discover and present such evidence. The appellate court noted that "there was still overwhelming evidence that the 'shake and bake' method had been at least attempted and [Petitioner] had been seen by multiple witnesses at the scene of the house fire." Resp. Ex. K at 7. The court reasoned that evidence regarding the insurance investigation

---

[2] The State's experts rebutted the suggestion that such electrical issues could have caused the fire.

9

may have, at most, demonstrated that Petitioner "had first attempted the 'shake and bake' method before failing and resorting to use of the stove, which caused the explosion," but that such fact would not have changed the State's case or provided Petitioner with a viable defense.  Resp. Ex. K at 7.

**Federal Habeas Petition**

Petitioner now raises eight grounds for federal habeas relief.   Petitioner asserts that trial counsel was ineffective for (1) failing to discover and call insurance investigator Dunkin as a witness at trial; (2) failing to adequately investigate the timeline of events on the night in question; (3) failing to call Stevens as a witness or to cross-examine Lee about the timeline of events; (4) failing to call Tony Lee as a witness; (5) failing to call as witnesses the children who reported to the EMT that they saw a water heater smoking and wires melting in Stinnett's home on the day before the fire; and (6) failing to address inconsistencies in particular pieces of evidence.  Petitioner also asserts that (7) the evidence was insufficient to support the arson and related felony murder charges; and (8) the trial court erred in overruling Petitioner's objection to Lee's testimony that she sold "fake meth" for Petitioner at a bar on the night before the fire.

Respondent argues that Grounds 2 through 6 have been procedurally defaulted, and that all of the claims are without merit.

## DISCUSSION

**Legal Standard**

Federal habeas relief is available to a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28

10

U.S.C. § 2254(a).  Where a claim has been adjudicated on the merits in state court, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides that habeas relief cannot be granted unless the state court's adjudication:

1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

The Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984).  In order to show ineffective assistance of counsel, "a [petitioner] must show that counsel's performance was deficient," and "that the deficient performance prejudiced [his] defense." *Id.* at 687.  When "[c]onsidering an attorney's performance, [the court] must indulge a strong presumption that the conduct was reasonable, and the [petitioner] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Paulson v. Newton Corr. Facility*, 773 F.3d 901, 904 (8th Cir. 2014) (citation omitted).  In other words, the petitioner must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *White v. Dingle*, 757 F.3d 750, 752 (8th Cir. 2014) (citation omitted).  In order to show prejudice, a petitioner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the

11

proceeding would have been different." *Id.* at 753 (citations omitted).

**<u>Procedurally Defaulted Claims (Grounds 2 through 6)</u>**

Under the doctrine of procedural default, a federal habeas court is barred from considering the merits of a claim not fairly presented to the state courts, absent a showing by the petitioner of cause for the default and prejudice resulting therefrom, or that he is actually innocent, such that a miscarriage of justice would result by failing to consider the claim. *E.g., Murphy v. King*, 652 F.3d 845, 848-49 (8th Cir. 2011). The Court agrees with Respondent that Petitioner's Grounds 2 through 6 were procedurally defaulted in state court.

Although Petitioner raised all of these claims in his amended motion for post-conviction relief, he did not pursue them on appeal from the denial of that motion. In Missouri, "a claim [must] be presented 'at each step of the judicial process' in order to avoid default." *Jolly v. Gammon,* 28 F.3d 51, 53 (8th Cir. 1994) (quoting *Benson v. State*, 611 S.W.2d 538, 541 (Mo. Ct. App. 1980)). "Failure to raise a claim on appeal from the denial of a post-conviction motion erects a procedural bar to federal habeas review." *Id.*

Petitioner has not shown cause to excuse the default[3] or shown that a miscarriage of justice will result if his defaulted claims are not considered. *See Abdi v. Hatch*, 450 F.3d 334, 338 (8th Cir. 2006) (holding that a petitioner must present new evidence that

---

[3] Petitioner has not alleged ineffective assistance of postconviction appellate counsel, and in any event, such an allegation has not been recognized as cause to excuse a procedural default in the habeas context. *See Arnold v. Dormire*, 675 F.3d 1082, 1087 (8th Cir. 2012).

12

affirmatively demonstrates that he is actually innocent of the crime for which he was convicted in order to fit within the miscarriage of justice exception). The Court's review of Grounds 2 through 6 is therefore barred, and those grounds cannot support a grant of federal habeas relief.

**Remaining Claims (Grounds 1, 7, and 8)**

As to the grounds which were not defaulted, the Court concludes that each is without merit. When addressing claims that were addressed by state courts, "[t]aken together, AEDPA and *Strickland* establish a doubly deferential standard of review." *Williams v. Roper*, 695 F.3d 825, 831 (8th Cir. 2012) (citation omitted). It is not sufficient for a petitioner to "show that he would have satisfied *Strickland*'s test if his claim were being analyzed in the first instance." *Bell v. Cone*, 535 U.S. 685, 698-99 (2002). "Rather, he must show that the [state court] applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Id*. at 699.

Ground 1: Failure to Discover and Call Insurance Investigator Dunkin

The state appellate court's adjudication of Petitioner's claim of ineffective assistance of trial counsel based on the failure to discover and call Dunkin as a witness did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law or that was based on an unreasonable determination of the facts in light of the evidence presented at trial and the post-conviction hearing. The state court reasonably found that the second prong of the *Strickland* analysis was not satisfied.

Specifically, the state court reasonably concluded that there was no reasonable probability that, but for trial counsel's failure to discover and call Dunkin as a witness, the result of trial would have been different. The evidence at trial, including physical evidence, expert testimony, and testimony from multiple witnesses, established that the "shake and bake" method of methamphetamine production had at least been attempted at Stinnett's home, that the fire was caused by attempted methamphetamine production, that Petitioner was present at the scene of the fire, and that Petitioner attempted to flee following the fire. Dunkin's testimony would not have undermined any of these facts and would instead have only bolstered the State's theory that the fire was caused by the attempted production of methamphetamine near the right, rear corner of Stinnett's house.

In short, the Missouri Court of Appeals based its rejection of Petitioner's claim of ineffective assistance of counsel on the correct legal principles and a fair reading of the record. Accordingly, the Court will deny Petitioner's first ground for habeas relief.

Ground 7: Sufficiency of the Evidence

The Due Process Clause prohibits the conviction of an accused "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). In the § 2254 setting, the federal court must consider "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original); *see also Evans v. Luebbers*, 371 F.3d 438, 441 (8th Cir. 2004). The scope of habeas review of such a claim is "extremely limited." *Skillicorn v.*

14

*Luebbers*, 475 F.3d 965, 977 (8th Cir. 2007).  This means that when "a reviewing court [is] 'faced with a record of historical facts that supports conflicting inferences [the reviewing court] must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'"  *McDaniel v. Brown*, 558 U.S. 120, 133 (2010) (per curiam) (quoting *Jackson*, 443 U.S. at 326)).

This Court may grant federal habeas relief only if the Missouri Court of Appeals' determination that the evidence satisfied the sufficiency of evidence standard was "both incorrect and unreasonable" under *Jackson*.  *Garrison v. Burt*, 637 F.3d 849, 855 (8th Cir. 2011); *see also Webb v. Steele*, No. 4:10 CV 758 RWS; 2014 WL 684006, at *13 (E.D. Mo. Feb. 21, 2014).

As noted above, the state court reasonably determined that, viewing the physical evidence, expert testimony, and witness testimony in the light most favorable to the verdict, there was sufficient circumstantial evidence to support Petitioner's conviction of the arson and the felony murder counts based on the arson.  The jury heard evidence that Petitioner previously discussed plans to put a methamphetamine lab in Stinnett's house; that Petitioner purchased supplies for production of methamphetamine; that Petitioner attempted the "shake and bake" method of production and thereby caused another fire shortly before the fire at issue; that Petitioner and his associates thereafter wished to secure more methamphetamine; that Petitioner was thereafter seen at Stinnett's residence just before the fire erupted; that the fire was caused by the attempted production of methamphetamine; that a "shake and bake" method of such production had been

15

attempted at the residence; and that, after the fire, Petitioner and his associate fled the state and left a note stating "don't try to get a hold of me." This is enough evidence for a rational jury to infer that Petitioner either directly or as an accomplice attempted to produce methamphetamine at Stinnett's home, which caused the fire and killed the two child victims.[4] The Missouri Court of Appeals did not unreasonably apply the *Jackson* standard in disposing of this claim. Therefore, the Court will deny Petitioner's seventh ground for federal habeas relief.

Ground 8: Evidentiary Ruling

"In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States," and it is not within "the province of a federal habeas court to reexamine state-court determinations on state-law questions," such as the admissibility of evidence at trial. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (citations omitted); *see also Bucklew v. Luebbers*, 436 F.3d 1010, 1018 (8th Cir. 2006). "A federal issue is raised only where trial errors infringe on a specific constitutional protection or are so prejudicial as to amount to a denial of due process." *Bucklew*, 436 F.3d at 1018. A habeas petitioner must show that alleged errors in the admission of evidence rendered the trial fundamentally unfair, such that there is a reasonable probability that error affected the outcome of trial. *Carter v. Armontrout*, 929 F.2d 1294, 1296 (8th Cir. 1991).

---

[4] Petitioner does not dispute that the state courts correctly interpreted Missouri law regarding the elements of the arson and felony-murder convictions; nor does he dispute that the jury was properly instructed as to these elements.

16

Here, as the state court reasonably held, in light of the other evidence against Petitioner, any evidentiary error in admitting Lee's testimony regarding her sale of "fake meth" on behalf of Petitioner was not so prejudicial as to amount to a denial of due process. Accordingly, the Court will deny Petitioner's eighth ground for habeas relief.

## CONCLUSION

The Court concludes that Petitioner is not entitled to federal habeas relief. The Court does not believe that reasonable jurists might find the Court's assessment of the procedural or substantive issues presented in this case debatable or wrong, for purposes of issuing a Certificate of Appealability under 28 U.S.C. § 2254(d)(2). *See Buck v. Davis*, 137 S. Ct. 759, 773 (2017) (standard for issuing a Certificate of Appealability) (citing *Miller–El v. Cockrell*, 537 U.S. 322, 336 (2003)).

Accordingly,

**IT IS HEREBY ORDERED** that the petition of Joshua L. Maynard for a writ of habeas corpus relief is **DENIED**.

**IT IS FURTHER ORDERED** that a certificate of appealability shall not be issued.

A separate Judgment shall accompany this Memorandum and Order.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 24th day of January, 2023.